## THE STATE v. CHARLES McAFEE, Appellant.

### Division Two, November 24, 1908.

MURDER IN SECOND DEGREE: Sufficient Evidence: No Sudden Fear or. Heat of Passion.   Deceased had threatened to whip defendant, and approached him as he was leaning against a lemonade stand on a picnic ground, and laid his hands on him, and the two moved out of the crowd, talking about fighting as they went, and deceased asked defendant to take his hand off his hip pocket and fight him fair, but as deceased was taking off his vest defendant shot him, and after deceased had fallen he stated, "You have killed me," and thereupon defendant was preparing to shoot him again when one of the witnesses interfered and told him to desist.   Defendant did not seek the quarrel, but had provided himself with a pistol in anticipation of it, and took advantage of the quarrel to shoot deceased, who was unarmed and who had not struck at defendant at the time the shot was fired but was merely preparing for a personal encounter by taking off his vest.   While deceased had applied insulting epithets to defendant and had threatened to whip him, there is no evidence tending to prove that defendant was thereby aroused to a sudden heat of passion; on the contrary, the testimony is that both men appeared to be cool and self-possessed.   *Held,* that the killing was done with premeditation and deliberation, and the evidence was sufficient to have supported a verdict of murder in the first degree, and one of murder in the second degree is not disturbed.

Appeal from Wayne Circuit Court.—*Hon. Jos. J. Williams,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-General, and *F. G. Ferris,* Assistant Attorney-General, for the State.

(1) The jury by their verdict found the defendant guilty of murder in the second degree, which was sufficient. If it be held that the jury failed to declare the punishment, then, in such case, it was the statutory duty of the court to assess and declare the punishment and render judgment accordingly. R. S. 1899, sec. 2649; State v. King, 194 Mo. 484; State v. Van Wye, 136 Mo. 243. (2) There was ample evidence to support the verdict of murder in the second degree. The record is free from error, and the judgment should be affirmed.

BURGESS, J.—On the 25th day of January, 1908, the prosecuting attorney of Wayne county filed an information in the circuit court of said county, charging the defendant with murder in the first degree for the killing of one J. M. Boatwright, with a loaded pistol, at said county, òn the 4th day of July, 1907. He was tried upon said charge on the 19th day of February, 1908, and convicted of murder in the second degree, the verdict of the jury fixing his punishment "at ten years in the penitentiary." On the same day the defendant filed motions for a new trial and in arrest of judgment, which were overruled by the court. Thereafter, on the 22d day of February, 1908, the defendant and his counsel being present, the court, in view of the informality in the verdict respecting the punishment, changed its terms so as to read "at imprisonment in the penitentiary for the term of ten years." The court thereupon rendered its judgment and passed sentence upon the defendant, from which judgment the defendant appeals.

The testimony discloses that on July 4, 1907, there was a picnic at Mill Springs, Wayne county, Missouri, which was attended by a large crowd of people. De-

fendant was early in town that morning, and between nine and ten o'clock in the forenoon he appeared at a store in Mill Springs and traded his watch for a revolver. The deceased, J. M. Boatwright, was seen on the picnic grounds that forenoon, apparently somewhat under the influence of liquor, and was making inquiries for defendant, whom he said he wanted to whip. Boatwright was a short man, weighing about one hundred and sixty-five pounds, and the defendant was about the same weight but taller. About one o'clock in the afternoon, as defendant was leaning against a lemonade stand in the picnic grounds, Boatwright walked up to him and placed his hand on his shoulder. Some words passed between them, and then both men moved out of the crowd and into the open. There is some divergence in the testimony respecting the words which passed between the two men, and the epithets applied by each to the other, while at the lemonade stand and up to the time the fatal shot was fired. According to witness Elmer E. Boggs, who was within ten feet of the parties at the time, he saw both come out of the crowd, each man with his hand on the other's shoulder, and heard Boatwright say to defendant that he would "go out of the crowd with him or any other son-of-a-bitch." The defendant said, "Do I understand you to call me a son-of-a-bitch?" Boatwright made no answer, but told defendant to take his hand out of his hip pocket and he would fight him fair. He then proceeded to take off his vest, and while in the act of doing so he was shot by the defendant with a pistol which he drew out of his right hip pocket. After the shot was fired Boatwright fell forward and grabbed at the pistol, and then fell on his back and died. This witness also testified that neither man appeared excited, but cool and self-possessed, and that at the time the fatal shot was fired they were two or three feet apart.

Judge Creecy testified that he was within ten or fifteen feet of the men when the trouble commenced. He saw Boatwright motion to defendant and heard him say, "Come out of the crowd, you damn-son-of-a-bitch; I can whip you." Defendant seemed angry, but not excited, and said, "Don't call me that any more." Boatwright then said, "I'll call you anything I want to." The defendant put his hand into his hip pocket, and Boatwright commenced pulling off his vest, saying, "I'll whip you any way, with your hand in there," and applied another ugly epithet to the defendant. Immediately the defendant fired, and Boatwright said, "You have killed me," whereat the defendant said, "If I ain't, G—d d—n you, I can do it." As soon as Boatwright was down, the defendant drew his pistol on him again with both hands, at which time witness Creecy stepped up to the defendant, and said, "Don't shoot him any more. You have already killed him; look at the blood on his shirt." To this defendant replied, "You stand back and keep your hands off of him or I will put one in you." Several other witnesses for the State testified much to the same effect, the testimony differing somewhat as to the details, all agreeing, however, that Boatwright was in the act of taking off his vest when the defendant shot him. There was no evidence that deceased struck at the defendant or that he had any weapon. Dr. Owens, who was also an eye-witness to the shooting, and whose testimony was like to that of the other witnesses for the State, examined the body of the deceased, and found a bullet wound in his right breast, between the first and second ribs. He testified that this wound caused the death of the deceased.

Charles McAfee, the defendant, testifying in his own behalf, said that a week before the said Fourth of July, Sarah Baker told him that Boatwright was going to kill him on sight. He had seen Boatwright

twice in the morning, but avoided him, and was told that morning, at the picnic, by Sarah Baker, Alice Swann and George Mann that Boatwright was hunting for him. He said he was standing at the lemonade stand talking with Mr. Mann, who had just told him that Boatwright was hunting him, when Boatwright approached, grabbed him by the left arm, called him a vile name, and then said: "Come out here; I am going to kill you." To this the defendant replied, "No, sir; I don't think any of the Boatwrights can do that." He testified that Boatwright held to his arm and pulled him out of the crowd, he resisting all the time, and that as Boatwright made a movement with his hand towards the right-hand pocket of his pants he (defendant) shot him. He said that he was not able to meet Boatwright in a physical encounter, and was not his equal in size or strength. He denied that the deceased was taking his vest off when he shot him, or that deceased told him to take his hand out of his pocket, or that he said he would fight him fair. In defendant's behalf, Sarah Baker testified that about a week before said day she heard Boatwright threaten defendant's life, and that about 9 o'clock on the morning of that day Boatwright told her he was hunting defendant and that he was going to kill him, which threats she communicated to defendant that morning. She stated that she witnessed the beginning of the difficulty; that she was on one side of the lemonade stand, and the defendant and Boatwright on the other; that Boatwright went up to the defendant, grabbed him roughly by his shoulder, addressed him in insulting language, and said that he was going to kill him. Her testimony further disclosed that there was ill-feeling between the defendant and Boatwright's half-brother, Ed. Boatwright, resulting from their respective attentions to a Mrs. Swann.

Rufus Tindall, in defendant's behalf, testified that

in the morning of that day he met Boatwright, who inquired for the defendant, saying that he was going to give him a good whipping; that about one o'clock he again met Boatwright, who inquired if he had seen the defendant, and that as he made the inquiry he saw the defendant, and remarked, "What I am going to do to him will be a plenty." Tindall requested him not to get up any trouble, and Boatwright, who had a knife in his hand, whittling, at the time, said, "I just want to get to stick that much of the blade in his heart." Witness further said that Boatwright seemed mad; that he went up to the defendant, took him by the shoulder and told him that he was going to give him a whipping; that he pulled the defendant along, the latter resisting, until they emerged from the crowd, when Boatwright stepped in front of defendant, and they both stopped; that defendant drew his pistol, and Boatwright seemed to be grabbing at it, defendant fired, and Boatwright pitched forward against him.

Ben Nation, witness for the defendant, testified that Boatwright took hold of defendant's shoulder, pulled him along, and said that he was going to give him a good whipping; that Boatwright was grabbing at defendant's pistol as the shot was fired, and that Boatwright's vest was on one shoulder only when he fell.

Defendant introduced four witnesses who testified that Boatwright's reputation in the community was that of a quarrelsome, turbulent and dangerous man.

While the defendant is not represented in this court, we have carefully gone through the record, and find it free from substantial error. Under the evidence, the defendant might well have been convicted of murder in the first degree. While he did not seek the quarrel with the deceased, he provided himself with a pistol in anticipation of it, and took advantage

214 Sup.—19

thereof to shoot the deceased, who was unarmed, and who at the time the shot was fired was in the act of taking off his vest. The deceased had not struck at the defendant, but was at the time merely preparing for a personal encounter with the defendant, whom he had threatened to whip. It is true, the deceased had applied insulting epithets to the defendant, and threatened to whip him, but there is no evidence tending to prove that the defendant was thereby aroused to a sudden heat of passion, the testimony, on the contrary, being that both men appeared to be cool and self-possessed at the time. Even after the shot was fired, and the deceased had fallen, the defendant was about to shoot again when one of the witnesses present interfered and told him to desist. Indeed, from all the evidence, it is plain that the killing was done with premeditation and deliberation, and the defendant might well count himself fortunate in escaping with so light a sentence.

The judgment is affirmed. All concur.